COATES v BASTIAN BROTHERS, INC

Docket No. 266046. Submitted March 14, 2007, at Lansing. Decided
August 30, 2007, at 9:00 a.m. Leave to appeal sought.

Bentley & Associates, Inc., brought an action in the Saginaw Circuit
Court against Richard M. Drinan and Pamela Coates, alleging in
part that Coates had breached the noncompetition provision of her
employment agreement by accepting employment with a competi-
tor of Bentley after Bentley terminated Coates's employment.
Coates subsequently brought an action in the same court against
Bastian Brothers, Inc., and others, including Bentley, alleging in
part that Bentley had breached the provision of the employment
agreement requiring just cause for termination and had breached
a provision giving Coates a right of first refusal when Bentley sold
its stock. The court, Lynda L. Heathscott, J., consolidated the
actions for trial. The court denied motions by both sides for partial
directed verdicts. The jury found that Coates had breached the
noncompetition provision. It also found that Bentley had breached
the provisions concerning termination for just cause and the right
of first refusal and had failed to pay Coates bonuses it owed her.
The jury awarded Bentley $60,000 for Coates's breach of the
noncompetition provision and awarded Coates $60,000 for Bent-
ley's breach of the right-to-first-refusal provision, $27,332 for
Bentley's breach of the just-cause provision, and $6,000 for Bent-
ley's failure to pay the bonuses. The court entered a net judgment
of $33,332 in Coates's favor. Bentley and Bastian Brothers ap-
pealed in the action brought by Coates, and Coates cross-appealed.

The Court of Appeals *held*:

1. The trial court erred by denying Bentley and Bastian
Brothers' motion for a partial directed verdict on Coates's claim
concerning the right of first refusal. The employment agreement
granted Coates a right of first refusal only upon Bentley's sale of
the business or its stock. Bentley, however, redeemed its outstand-
ing stock, and a redemption differs from a sale. Thus, Coates's
right of first refusal did not accrue, and the trial court's judgment
must be reversed with respect to this claim, requiring the entry of
a net judgment of $26,668 in Bentley's favor.

2. The trial court did not err by denying Coates's motion for a partial directed verdict on her claim concerning the noncompetition provision. Agreements not to compete are permissible as long as they are reasonable with regard to duration, geographical area, and the type of employment or line of business. MCL 445.774a(1). The burden of demonstrating the validity of the agreement is on the party seeking enforcement. The noncompetition provision was reasonable as a matter of law, given its limited temporal scope of one year, its modest geographic scope of 100 miles, and the 22-year length of Coates's employment with Bentley. The effect of the trial court's denial was to leave the issue of reasonableness to the jury, which enforced the provision. Even though the trial court should have decided the issue of reasonableness as a matter of law, the proper result was reached and it will not be disturbed.

3. Coates argued that Bentley should be barred from enforcing the noncompetition provision because, under the jury's verdict, Bentley was the first to materially breach the employment agreement. However, she failed to preserve this issue. Alternatively, Coates's interpretation of the noncompetition provision contravenes the plain language of the agreement, which makes the noncompetition provision applicable regardless of the reason for Bentley's termination of Coates's employment. The parties' freedom to contract must be respected. Under the plain terms of their agreement, Coates was barred from working for a competitor for one year even though Bentley terminated her employment without cause.

Affirmed in part, reversed in part, and remanded for further proceedings.

SAAD, J., concurring in part and dissenting in part, agreed with the majority regarding all issues except its holding regarding the enforceability of the noncompetition agreement. Because this issue was not preserved, Judge SAAD would hold that Bentley and Bastian Brothers waived their claim concerning the noncompetition provision. Inasmuch as the majority addressed the issue, however, he would hold that Coates is not bound by the provision because Bentley breached the just-cause termination provision of the employment agreement. An employer should not be allowed to wrongfully terminate employment and by this wrongful conduct gain the advantage of preventing the wrongfully discharged employee from securing employment with the employer's competitor.

1. CONTRACTS — RIGHTS OF FIRST REFUSAL — SALE OF STOCK — STOCK REDEMP-
TION.

    A right of first refusal conditioned on the sale of a company's stock
does not accrue upon the company's redemption of its outstanding
stock.

2. CONTRACTS — NONCOMPETITION AGREEMENTS.

    An agreement not to compete entered into by an employer and an
employee is enforceable as long as it is reasonable with regard to
its duration, geographical area, and the type of employment or line
of business; the burden of demonstrating the agreement's validity
is on the party seeking enforcement (MCL 445.774a[1]).

*Fordney, Prine & Coffey* (by *Andrew W. Prine*) for
Pamela Coates.

*Braun Kendrick Finkbeiner P.L.C.* (by *Scott C. Strat-
tard*) for Bastian Brothers, Inc., and Bentley & Associ-
ates, Inc.

Before: SMOLENSKI, P.J., and SAAD and WILDER, JJ.

WILDER, J. Defendants appeal as of right and plaintiff
cross-appeals as of right a judgment awarding plaintiff
$33,332 following a jury trial. This action arises out of
an employment agreement between plaintiff and defen-
dant Bentley & Associates, Inc. (Bentley). On appeal,
defendants argue that the trial court erred in denying
their motion for a directed verdict, because plaintiff's
right of first refusal to buy Bentley's stock did not
accrue. On cross-appeal, plaintiff argues that the trial
court erred in denying her motion for a directed verdict
regarding a noncompetition clause and that Bentley is
barred from enforcement of the noncompetition clause
because the jury found that Bentley was the first to
breach the employment agreement (by firing plaintiff
without cause). We hold that (1) the trial court erred in
denying defendants' motion for a directed verdict on the
right-of-first-refusal clause, (2) the trial court did not

err in denying plaintiff's motion for a directed verdict on the noncompetition clause, and (3) Bentley is not barred from enforcement of the noncompetition clause by reason of its first breach. Therefore, we (1) reverse the judgment as it relates to plaintiff's right-of-first-refusal claim, (2) affirm the judgment in all other respects, and (3) remand for (a) entry of a directed verdict for defendants on plaintiff's right-of-first-refusal claim and (b) modification of the judgment to accord with this opinion.

I

(A)

The relevant facts are undisputed. Plaintiff began working for Bentley in 1980. In 1987, plaintiff and Bentley entered into an employment contract (an agreement prohibiting the firing of plaintiff without just cause), with plaintiff being employed as general manager. The contract contained both a noncompetition clause imposed on plaintiff and a right of first refusal in plaintiff's favor, whereby plaintiff would be given an opportunity to purchase Bentley stock if Bentley sold it.

John R. Waugh is the president of Bentley. Jeffrey Waugh is the vice president. John F. Waugh and Elnor Waugh are the parents of John R. and Jeffrey.

In 2001, Bentley had 4,000 shares outstanding. John F. Waugh and Elnor Waugh gave 320 shares to John R. and Jeffrey. Bentley redeemed the remaining 3,680 shares.

In October 2002, Bentley terminated plaintiff's employment. Plaintiff then accepted a position with a competitor.

(B)

Defendants brought an action for breach of the noncompetition clause. Plaintiff subsequently brought this action for breach of the just-cause and first-refusal provisions, and the trial court consolidated the actions for trial.

At trial, both sides moved for partial directed verdicts, with plaintiff arguing that the noncompetition provision was unenforceable and defendants arguing that the right of first refusal had not been activated. The trial court denied both motions.

The jury found (1) that plaintiff had breached the noncompetition clause and (2) that Bentley had breached (a) the right-of-first-refusal provision, (b) the just-cause provision, and (c) its obligation to pay plaintiff bonuses. The jury awarded Bentley $60,000 for plaintiff's breach of the noncompetition clause and awarded plaintiff $60,000 for Bentley's breach of the first-refusal provision, $27,332 for Bentley's breach of the just-cause provision, and $6,000 for Bentley's breach of its obligation to pay bonuses. The trial court entered a net judgment of $33,332 in plaintiff's favor.

II

(A)

Defendants contend that the trial court erred in denying their motion for a partial directed verdict because plaintiff's right of first refusal did not accrue. We agree.

We review de novo a ruling on a motion for a directed verdict. *Smith v Jones*, 246 Mich App 270, 273; 632 NW2d 509 (2001). The motion is properly granted if, viewing the evidence in a light most favorable to the

nonmoving party, reasonable minds cannot differ. *Id.* The proper interpretation of a contract is a question of law, which we also review de novo. *Wilkie v Auto-Owners Ins Co,* 469 Mich 41, 47; 664 NW2d 776 (2003); *Randolph v Reisig,* 272 Mich App 331, 333; 727 NW2d 388 (2006).

(B)

That contracts are enforced according to their terms is a corollary of the parties' liberty to contract. *Rory v Continental Ins Co,* 473 Mich 457, 468; 703 NW2d 23 (2005). This Court examines contractual language and gives the words their plain and ordinary meanings. *Wilkie, supra* at 47.[1] "[A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law," and "[i]f the language of the contract is unambiguous, we construe and enforce the contract as written." *Quality Products & Concepts Co v Nagel Precision, Inc,* 469 Mich 362, 375; 666 NW2d 251 (2003).[2] Courts may not impose an ambiguity on clear contract language. *Grosse Pointe Park v Michigan Muni Liability & Prop Pool,* 473 Mich 188, 198; 702 NW2d 106 (2005). A contract is ambiguous when two provisions "irreconcilably conflict with each other," *Klapp v United Ins Group Agency, Inc,* 468 Mich 459, 467; 663 NW2d 447 (2003), or "when [a term] is equally susceptible to more than a single meaning," *Lansing Mayor v Pub Service Comm,* 470 Mich 154, 166; 680 NW2d 840 (2004).

---

[1] In other words, if "contract language is neither ambiguous nor contrary to . . . statute, the will of the parties, as reflected in their agreement, is to be carried out, and thus the contract is enforced as written." *Muci v State Farm Mut Automobile Ins Co,* 267 Mich App 431, 435; 705 NW2d 151 (2005), rev'd on other grounds 478 Mich 178 (2007).

[2] In other words, if a contract is unambiguous, its meaning is for the court to decide. *Davis v LaFontaine Motors, Inc,* 271 Mich App 68, 73; 719 NW2d 890 (2006).

Whether a contract is ambiguous is a question of law. *Wilkie, supra* at 47. Only when contractual language is ambiguous does its meaning become a question of fact. *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996).[3] Agreements granting rights of first refusal are enforceable. See *Randolph, supra* at 336-337.

The parties' employment contract granted plaintiff a right of first refusal only upon the sale of stock or the business: "*In the event the Company shall elect to sell the business or the common capital stock* of the Company, the Company grants to Employee a right of first refusal on like terms and conditions as any reasonable third party offer to purchase." (Emphasis added.) We hold that this term is unambiguous, because it is not susceptible to more than one interpretation and does not conflict with any other term. It affords plaintiff a right of first refusal upon the happening of Bentley's "elect[ion] to sell the business or ... stock" and its receipt of a reasonable offer to purchase.

The question before us is whether Bentley "elect[ed] to sell ... stock ...."[4] Dictionary definitions may be used to ascertain the plain and ordinary meaning of terms undefined in an agreement. *Cole v Auto Owners Ins*, 272 Mich App 50, 53; 723 NW2d 922 (2006). "Sell" means "to transfer (goods or property) or render (services) in exchange for money" or "to ... offer for sale ...." *Random House Webster's College Dictionary* (1997). "Purchase" means "to acquire by the payment of money or its equivalent; buy." *Id*. Under the unam-

---

[3] The rule of *contra proferentum* (construction of an agreement against its drafter) is used only when there is a true ambiguity and the parties' intent cannot be discerned through all conventional means, including extrinsic evidence. *Klapp, supra* at 470-471.

[4] There is no contention that Bentley "elect[ed] to sell the business[.]"

biguous language of the contract, plaintiff therefore enjoyed a right of first refusal in the event Bentley elected "to transfer" for money or "offer for sale" its common stock and received a reasonable offer to purchase.

Viewing the evidence in the light most favorable to plaintiff, *Smith, supra* at 273, reasonable minds cannot differ concerning the conclusion that the conditions required for the right of first refusal never occurred. Instead of "elect[ing] to sell" its stock, Bentley actually *redeemed* outstanding stock. A redemption differs from a sale. See MCL 450.1344 ("[A] corporation may acquire its own shares . . . ."); Black's Law Dictionary (8th ed) (defining "redemption" as "[t]he act or an instance of reclaiming or regaining possession by paying a specific price," including "[t]he reacquisition of a security by the issuer").[5] Thus, because Bentley did not "elect to sell the business or [its] stock," plaintiff's first-refusal right did not accrue. Accordingly, a directed verdict was proper on plaintiff's claim because plaintiff made no prima facie showing of liability on this claim. *Elezovic v Ford Motor Co*, 472 Mich 408, 429 n 29; 697 NW2d 851 (2005). The trial court erred in denying defendants' motion for a partial directed verdict.

### III

#### (A)

On cross-appeal, plaintiff argues that (1) the trial court erred in denying her motion for a partial directed verdict regarding the noncompetition clause, because the clause was unenforceable as a matter of law, and (2)

---

[5] Though defendants John F. and Elnor Waugh (or trusts they controlled) clearly "elect[ed] to sell" their stock to Bentley, plaintiff had no contract with the Waughs under which she enjoyed first-refusal rights.

Bentley was barred from enforcement of the clause when the jury found that Bentley had breached the employment agreement first. We disagree.

The reasonableness of a noncompetition provision is a question of law when the relevant facts are undisputed. See *St Clair Med, PC v Borgiel*, 270 Mich App 260, 267-269; 715 NW2d 914 (2006). Questions of law are reviewed de novo. *Bandit Industries, Inc v Hobbs Int'l, Inc (After Remand)*, 463 Mich 504, 511; 620 NW2d 531 (2001).

(B)

(1)

MCL 445.774a(1) governs the enforceability of agreements not to compete made between employers and employees:

> An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment *if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business*. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited. [Emphasis added.]

"Agreements not to compete are permissible under Michigan law as long as they are reasonable." *Thermatool Corp v Borzym*, 227 Mich App 366, 372; 575 NW2d 334 (1998). In other words:

> [A] restrictive covenant must protect an employer's reasonable competitive business interests, but its protec-

tion in terms of duration, geographical scope, and the type
of employment or line of business must be reasonable.
Additionally, a restrictive covenant must be reasonable as
between the parties, and it must not be specially injurious
to the public.

Because the prohibition on all competition is in re-
straint of trade, an employer's business interest justifying
a restrictive covenant must be greater than merely pre-
venting competition. To be reasonable in relation to an
employer's competitive business interest, a restrictive cov-
enant must protect against the employee's gaining some
unfair advantage in competition with the employer, but not
prohibit the employee from using general knowledge or
skill. [*St Clair Medical, PC, supra* at 266 (citation omit-
ted).]

The noncompetition clause in this case provided:

Employee will not for a period of one (1) year after
termination of employment with the Company, regardless
of the reason for termination of employment, participate
either personally or financially in any enterprise in compe-
tition with the Company. If the physical location of an
enterprise is not within one hundred (100) miles of any
business location of the Company, that enterprise will not
be viewed as in competition with the Company.

As a general matter, courts presume the legality,
validity, and enforceability of contracts. *Cruz v State
Farm Mut Automobile Ins Co*, 466 Mich 588, 599; 648
NW2d 591 (2002). But noncompetition agreements are
disfavored as restraints on commerce and are only
enforceable to the extent they are reasonable. *Stoia v
Miskinis*, 298 Mich 105, 118; 298 NW 469 (1941);
*Bristol Window & Door, Inc v Hoogenstyn*, 250 Mich
App 478, 495; 650 NW2d 670 (2002) (concluding that, in
enacting MCL 445.774a, the Legislature intended to
revive the common-law standards for the enforceability
of noncompetition agreements); see also MCL
445.774a(1). A court must assess the reasonableness of

the noncompetition clause if a party has challenged its enforceability. See MCL 445.774a(1); *Woodward v Cadillac Overall Supply Co*, 396 Mich 379, 389-391; 240 NW2d 710 (1976). The burden of demonstrating the validity of the agreement is on the party seeking enforcement. *Id*. at 391.

The trial court denied plaintiff's motion for a partial directed verdict, which argued that the noncompetition provision was unreasonable as a matter of law. The effect of the trial court's ruling was to leave the issue of reasonableness to the trier of fact. Plaintiff, however, elected not to present to the jury her argument concerning the agreement's unreasonableness, even though the trial court had rejected the argument that it was unreasonable as a matter of law. The jury enforced the clause.

The facts relevant to the reasonableness of the noncompetition clause are undisputed. It is undisputed that Bentley is a graphic communications and advertising firm. It is undisputed that plaintiff had worked for Bentley since 1980, and thus at the time of her firing had worked for Bentley for 22 years. It is undisputed that the noncompetition clause only applied for one year and applied to competitors within 100 miles. Because the relevant facts were undisputed, the trial court erred in not deciding the reasonableness of the noncompetition clause as a matter of law. *St Clair Medical, PC, supra* at 267-269.

We hold that the noncompetition clause was reasonable as a matter of law, given its limited temporal scope, its modest geographic scope, and the undisputed length of plaintiff's employment with Bentley. However, even though the trial court erroneously failed to decide this issue as a matter of law, the jury enforced the clause, and we will not reverse if the right result is reached,

albeit for the wrong reason. *FACE Trading, Inc v Dep't of Consumer & Industry Services*, 270 Mich App 653, 678; 717 NW2d 377 (2006). In short, the trial court did not err in denying plaintiff's motion for a partial directed verdict on the reasonableness and the enforceability of the noncompetition clause.

(2)

Plaintiff next argues that Bentley was barred from enforcing the noncompetition clause because, under the jury's verdict, Bentley was the first to materially breach the employment contract. Plaintiff cites *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994) (" '[O]ne who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach . . . .' ") (citation omitted). We disagree.

(a)

First, plaintiff's argument is unpreserved. Plaintiff presented this argument (that because Bentley breached first, it cannot enforce the noncompetition clause) to neither the jury (before its verdict) nor the trial court (after the verdict).[6] We therefore reject plaintiff's unpreserved claim. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507

---

[6] For example, plaintiff could have structured (or advocated the structuring of) the verdict form so that the first question was whether Bentley fired plaintiff without cause, and, if the answer from the jury was yes, the jury would not have gone on to consider Bentley's claims. Alternatively, plaintiff could have brought a motion for judgment notwithstanding the verdict, to argue that the verdict was inconsistent or legally unenforceable, because the jury, by its verdict, found that Bentley was the first to breach but still allowed Bentley to recover for plaintiff's subsequent breach. Plaintiff brought no such motion.

NW2d 422 (1993) ("Issues raised for the first time on appeal are not ordinarily subject to review."); *Smith v Foerster-Bolser Constr, Inc,* 269 Mich App 424, 427; 711 NW2d 421 (2006).

(b)

Alternatively, the plain language of the noncompetition clause vitiates the first-breach doctrine: "Employee will not for a period of one (1) year after termination of employment with the Company, *regardless of the reason for termination of employment,* participate . . . in any enterprise in competition with the Company." (Emphasis added.) We hold that this provision is not ambiguous, because it is not susceptible to more than one interpretation and does not conflict with any other provision. *Klapp, supra* at 467; *Lansing Mayor, supra* at 166. Plaintiff was barred from competing with Bentley, *regardless of the reason for the termination of plaintiff's employment.* In other words, *even though* plaintiff's employment was terminated *without* cause, plaintiff was still barred from working for a competitor for one year. Thus, under this clause's plain terms, plaintiff cannot argue that because her employment was terminated without cause, Bentley was barred from enforcing the noncompetition clause. Such an interpretation contravenes the plain terms of the clause and therefore must be rejected. *Wilkie, supra* at 47. Bentley is entitled to the benefit of its unambiguous bargain. *Rory, supra* at 468.

We respect the parties' freedom of contract. *Id.* Here, the parties opted out of the first-breach doctrine by using the language "regardless of the reason for termination of employment." The parties are free to avoid, by

contract, what might otherwise be an applicable rule of
law.[7] See *id.* at 468-472.

---

[7] We question the continued viability of the first-breach doctrine
under our Supreme Court's contracts jurisprudence, which empha-
sizes the limited role of courts in contract disputes: courts enforce
unambiguous contract terms. *Quality Products & Concepts Co, supra*
at 375.

For instance, courts generally may not attempt to evaluate whether a
contract is one of "adhesion." See *Rory, supra* at 477. "An 'adhesion
contract' is simply that: a *contract*. It must be enforced according to its
plain terms unless one of the traditional contract defenses applies." *Id.*
*Rory* explained:

> Therefore, we hold that it is of no legal relevance that a
> contract is or is not described as "adhesive." In either case, the
> contract is to be enforced according to its plain language. Regard-
> less of whether a contract is adhesive, *a court may not revise or*
> *void the unambiguous language of the agreement to achieve a*
> *result that it views as fairer or more reasonable.*" [*Id.* at 489
> (emphasis added).]

*Rory* concluded: "Consistent with our prior jurisprudence, unambigu-
ous contracts . . . are to be enforced as written unless a contractual
provision violates law or public policy." *Id.* at 491.

Other decisions emphasize the limited role of courts in contract
disputes. *Wilkie* held that the doctrine of reasonable expectations is
inconsistent with the court's limited role of enforcing unambiguous
contracts:

> *This approach, where judges divine the parties' reasonable*
> *expectations and then rewrite the contract accordingly, is contrary*
> *to the bedrock principle of American contract law that parties are*
> *free to contract as they see fit, and the courts are to enforce the*
> *agreement as written absent some highly unusual circumstance,*
> *such as a contract in violation of law or public policy.* This Court
> has recently discussed, and reinforced, its fidelity to this
> understanding of contract law in *Terrien v Zwit*, 467 Mich 56,
> 71; 648 NW2d 602 (2002). The notion, that free men and women
> may reach agreements regarding their affairs without govern-
> ment interference and that courts will enforce those agree-
> ments, is ancient and irrefutable. [*Wilkie, supra* at 51-52
> (footnotes omitted; emphasis added).]

IV

We hold that the trial court erred in denying defendants' motion for a partial directed verdict on the right-of-first-refusal clause, because the undisputed facts indicate that the right of first refusal did not accrue. The trial court did not err in denying plaintiff's motion for a partial directed verdict, because the noncompetition clause was enforceable as a matter of law. We also reject plaintiff's argument that Bentley was barred from enforcing the noncompetition clause (given

---

Thus, the role of courts is to enforce unambiguous contracts as written. *Wilkie* also stated:

> The rights and duties of parties to a contract are derived from the terms of the agreement. *Evans v Norris,* 6 Mich 369, 372 (1859). As this Court has previously stated, "The general rule [of contracts] is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." *Terrien, supra* at 71, quoting *Twin City Pipe Line Co v Harding Glass Co,* 283 US 353, 356; 51 S Ct 476; 75 L Ed 1112 (1931). Under this legal principle, the parties are generally free to agree to whatever they like, and, in most circumstances, it is beyond the authority of the courts to interfere with the parties' agreement. *St Clair Intermediate School Dist v Intermediate Ed Ass'n,* 458 Mich 540, 570-572; 581 NW2d 707 (1998). Respect for the freedom to contract entails that we enforce only those obligations actually assented to by the parties. *Evans, supra* at 372. [*Id.* at 62-63.]

Thus, the courts' limited role in contract disputes is only to enforce all those, but only those, obligations actually assented to by the parties. *Id.*

Here, the parties' contract clearly provides that plaintiff may not work for a competitor for one year after the termination of her employment, "regardless of the reason for termination . . . ." To hold that Bentley is barred from enforcing this unambiguous contractual term, because it was the first to breach, would deny Bentley the benefit of its unambiguous bargain and contradict clear Supreme Court precedent providing that the courts must enforce unambiguous contractual terms. *Rory, supra* at 491; *Wilkie, supra* at 51-52, 62-63.

the jury's finding that Bentley first breached the contract when it fired plaintiff without cause), because plaintiff's argument is unpreserved and is inconsistent with the plain terms of the noncompetition clause. Therefore, we (1) reverse the judgment as it relates to plaintiff's right-of-first-refusal claim, (2) affirm the judgment in all other respects, and (3) remand for (a) entry of a directed verdict on plaintiff's right-of-first-refusal claim and (b) modification of the judgment to accord with this opinion, i.e., entry of a net judgment of $26,668 in Bentley's favor.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

SMOLENSKI, P.J., concurred.

SAAD, J. (*concurring in part and dissenting in part*). I concur with the majority regarding all issues except its holding regarding the enforceability of the noncompetition agreement. Because defendants failed to preserve this issue, I would hold that defendants waived their claim concerning the noncompetition agreement. However, inasmuch as the majority addresses this issue despite defendants' waiver, I write separately because I disagree with the majority's holding that the noncompetition provision is enforceable. Because defendants breached the just-cause provision of the employment agreement, I would hold that the plaintiff is not bound by the noncompetition provision of the employment agreement. The employer should not be allowed to wrongfully terminate plaintiffs' employment and then gain by this wrongful conduct the advantage of preventing the wrongfully discharged employee from securing employment, in her field, with defendants' competitor.