**NOT PRECDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 12-3566

_____

BAYSHORE FORD TRUCK SALES, INC., a Delaware corporation;
MOTOR CITY FORD TRUCKS, INC., a Delaware corporation;
COLONY FORD TRUCK CENTER, INC., a Rhode Island corporation,
individually and on behalf of all others similarly situated

v.

FORD MOTOR COMPANY

BAYOU CITY FORD TRUCK SALES, INC.; CROSSTOWN FORD SALES, INC.;
DAVE GILL TRUCKS, INC.; DUTHLER FORD TRUCK, INC.; EAGLE TRUCK
SALES OF WISCONSIN; EAST BAY TRUCK CENTER; LACY MOTORS, INC.;
LAKE ERIE FORD TRUCK CENTER; LAKELAND TRUCK CENTER, INC.;
LONG LEWIS OF CULLMAN, INC; MARTIN AUTOMOTIVE GROUP, INC.;
MIKE PRUITT FORD; NATIONAL CAR SALES, INC.; NORTHWEST TRUCK
AND TRAILER SALES, INC.; O'CONNOR TRUCK SALES, INC; ROBERTS
FORD TRUCKS; ROCK RIVER FORD, INC.; RON BLACKWELL FORD, INC.;
SACRAMENTO VALLEY FORD TRUCK SALES, INC.; SEA-TAC FORD
TRUCK SALES, INC.; SOUTHWEST TRUCK SALES, INC.;
WHITEFORD FORD TRUCK, INC.; WHITEFORD TRUCK CENTER FW, INC.;
WOLF MOTOR COMPANY; W. W. WALLWORK, INC.,

Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 2-99-cv-00741)
District Judge: Honorable Jose L. Linares

_____

Submitted under Third Circuit LAR 34.1(a)
on July 18, 2013

Before:  RENDELL, SMITH and ROTH, <u>Circuit Judges</u>

(Opinion filed: August 26, 2013)

O P I N I O N

**ROTH**, <u>Circuit Judge</u>:

In this appeal, the Appellants—twenty-five plaintiffs in the above-captioned litigation—appeal the District Court's grant of summary judgment to Ford.  For the reasons that follow, we will affirm the judgment of the District Court.

I.      **Background**[1]

Until 1997, Ford was a manufacturer of heavy trucks.  Ford sold its heavy trucks through a network of independent, franchised dealers.  Ford's relationship with its dealers was governed by a standard contract, the Sales and Service Agreement.  If Ford or a dealer terminated the Sales and Service Agreement, a dealer could elect to accept certain termination benefits.  However, Paragraph 23 of the agreement provided in relevant part that, "[u]pon the Dealer's election to accept any of such benefits, or upon the Dealer's demand of any such benefits upon any termination or nonrenewal by the Dealer, [Ford] shall be released from any and all other liability to the Dealer with respect to all relationships and actions between the Dealer and [Ford]."  Paragraph 23 further stated that, "[s]imultaneously with the receipt of any benefits so elected or demanded, the Dealer shall execute and deliver to [Ford] a general release . . .."

---

[1] We write primarily for the parties, who are familiar with the facts of this case. Therefore, we will set forth only those facts necessary to our analysis.

In 1997, Ford announced that it would no longer manufacture heavy trucks. Shortly thereafter, twenty-four of the twenty-five Appellants sent resignation letters demanding termination benefits under the Sales and Service Agreement. At or around the same time, the same group also sent letters in accordance with Paragraph 23 of the agreement, acknowledging receipt of termination benefits and releasing Ford from any liability except for the termination benefits owed by Ford. The letters were based on a template provided by Ford, but every letter was unique because each Appellant demanded personalized concessions. However, the language releasing Ford from liability was substantially the same in all of the letters. For example, one release letter stated: "[I]n accordance with Paragraph 23 of the Ford Sales and Service Agreement, we hereby release Ford from all other liability to us, except for such amounts as Ford may have agreed in writing to pay us, and will furnish Ford a satisfactory general release."

The remaining Appellant, W.W. Wallwork, Inc., did not resign its heavy truck dealership under the terms of the Sales and Service Agreement. Rather, it settled then-pending litigation with Ford by relinquishing its heavy truck dealership and receiving a medium truck franchise in its place. Under the terms of the settlement, Wallwork agreed to "release and forever discharge Ford . . . from all claims, actions, causes of actions, rights, or obligations, whether known or unknown, contingent or liquidated, of every kind, nature and description." The settlement agreement provided that it would be governed by North Dakota law.

In 1999, five of Ford's heavy truck dealers filed suit against Ford alleging a violation of the Federal Automobile Dealers Day in Court Act, 15 U.S.C. § 1221, *et seq.*,

and asserting several Michigan common law claims. The claims arose out of Ford's decision to stop manufacturing heavy trucks. In 2006, the District Court granted the five dealers' motion for class certification to bring their claims on behalf of all Ford heavy truck dealers.

In December 2005, the District Court granted summary judgment to the class on its claim that Ford breached the Sales and Service Agreement.[2] Ford then moved for summary judgment as to the Appellants, arguing that their claims were barred by the release provision in Paragraph 23 of the Sales and Service Agreement between Ford and the Appellants. The District Court agreed and held that the twenty-five Appellants would be excluded from the class. Following entry of final judgment as to the remaining class members, this appeal followed.

## II.     Standard of Review

We exercise plenary review over a grant of summary judgment. *See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 323 (3d Cir. 2012). Summary judgment is appropriate only when there is no issue in dispute regarding any material fact, so that the moving party is entitled to judgment as a matter of law. *Id*. A grant of summary judgment is reviewed in the light most favorable to the non-moving party. *Id*. This means that all reasonable inferences must be drawn in the non-movant's favor. *Id*.

---

[2] This breach of contract claim is the subject of a related appeal before us in No. 12-4342.

## III. Discussion[3]

The Appellants allege two errors:  (1) the District Court incorrectly held that they released all claims against Ford and (2) the District Court should have held that Ford violated Federal Rule of Civil Procedure 23 by soliciting waivers from the Appellants. These arguments are unavailing.

### A.    The Appellants Released All Claims Against Ford

The District Court held that, upon resigning their dealerships, demanding termination benefits, and electing to accept those benefits, the twenty-four Appellants who resigned their dealerships released any and all claims against Ford under Paragraph 23 of the Sales and Service Agreement.  The Appellants disagree, arguing that the releases they executed in 1997 are controlling because those releases were agreements separate from the Sales and Service Agreement.[4]  In support of this proposition, the

---

[3] The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and § 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

[4] The Appellants seek a ruling that the 1997 releases supersede Paragraph 23 of the Sales and Service Agreement because they take the position that the 1997 releases are not binding due to a lack of consideration.  As a result, the Appellants assert that their claims should be allowed to proceed against Ford.  As discussed below, the 1997 releases do not supersede the Sales and Service Agreement.  Therefore, we need not decide whether the 1997 releases were supported by consideration.

To the extent that the Appellants argue that the release in Paragraph 23 of the Sales and Service Agreement was not supported by consideration, this argument is meritless. "Where there is no specific recitation of separate consideration for the release, but it is part of a larger contract involving multiple promises, the basic rule of contract law is that whatever consideration is paid for all of the promises is consideration for each one[.]" *Rowady v. K Mart Corp.*, 428 N.W.2d 22, 25 (Mich. App. 1988).  Here, the contract involved multiple promises and also included a release provision.  There was no recitation of specific consideration for the release.  Ford provided consideration for all of the promises made by the Appellants by agreeing, among other things, to supply the

5

Appellants point to the fact that each release letter is different because they contain individually negotiated benefits.

The Appellants' argument is unavailing. Even though the release letters they executed in 1997 were individually negotiated to provide different termination benefits to each Appellant, the portions of those letters that released Ford from liability were substantially the same as the release contemplated in Paragraph 23. Therefore, we hold that the release language in the 1997 letters merely memorialized the terms that the Appellants agreed to in Paragraph 23 of the Sales and Service Agreement.[5]

"The scope of a release is controlled by the language of the release, and where . . . the language is unambiguous, we construe it as written." *Adair v. State*, 680 N.W.2d 386, 400 (Mich. 2004) (citation omitted). "A contract is ambiguous when two provisions irreconcilably conflict with each other or when [a term] is equally susceptible to more than a single meaning[.]" *Coats v. Bastian Brothers, Inc.*, 741 N.W.2d 539, 543 (Mich. App. 2007) (internal citations and quotation marks omitted). "[C]ontract construction, that is, the legal operation of the contract, is a question of law mandating plenary review." *In re Cendant Corp. Prides Litig.*, 533 F.3d 188, 193 (3d Cir. 2000).

Several other courts have addressed identical contractual language and reached the same result as the District Court. *See, e.g.*, *Rochester Ford Sales, Inc. v. Ford Motor Co.*,

_____

Appellants with heavy trucks to sell. Therefore, the Sales and Service Agreement was supported by consideration.

[5] This is equally true as to the seven Appellants who signed release letters before submitting resignation letters. As to these Appellants, Paragraph 23's liability release language was triggered when they elected to accept termination benefits, as acknowledged in their release letters.

6

287 F.3d 32, 40 n.4 (1st Cir. 2002) ("An election of benefits . . . automatically triggers the general release of paragraph 23."); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 330 (7th Cir. 1987) ("We can scarcely conceive of a more clearly written release of liability."). For the same reasons articulated by the District Court and the courts of appeals, we find that Paragraph 23 is unambiguous: it unequivocally states that when a dealer resigns its franchise, demands termination benefits, or accepts those termination benefits, Ford is fully released from any liability. This is precisely what happened here. The subsequent release was merely a memorialization of the initial release contained in paragraph 23. *DeValk*, 811 F.2d at 331. Therefore, the District Court correctly held that twenty-four of the Appellants' claims were barred by the release in Paragraph 23.[6]

As to the settlement between W. W. Wallwork and Ford, that agreement also was an effective and valid release of all claims against Ford. The settlement agreement was governed by North Dakota law, which is the same as Michigan law for all purposes relevant to this appeal. *See First Nat'l Bank & Trust Co. v. Scherr*, 435 N.W.2d 704, 706 (N.D. 1989). The settlement agreement released Ford from all claims "in any way connected with the Wallwork Parties' operation of the Ford dealership and their other operations in Fargo, North Dakota." This language is unambiguous. W. W. Wallwork plainly released all claims against Ford. Therefore, we will not disturb the District Court's ruling as to W. W. Wallwork.

---

[6] Because the release in Paragraph 23 is enforceable against the Appellants, we need not consider their argument that the subsequent releases signed in 1997 were unenforceable due to a lack of consideration.

**B.**     **The District Court Did Not Abuse Its Discretion By Ruling That Ford Did Not Violate Federal Rule of Civil Procedure 23**

The Appellants further allege that Ford undermined the integrity of the class action process by obtaining releases from putative class members in violation of Rule 23. This argument is without merit. Under Rule 23(d), a district court has a duty to "safeguard class members from unauthorized [and] misleading communications from the parties and their counsel." *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 418 F.3d 277, 310 (3d Cir. 2005) (citation and internal quotation marks omitted) (alteration in original). Consequently, a court may enter orders necessary to protect the integrity of the litigation. *See id.* We review the district court's decision to grant relief under Rule 23(d) for an abuse of discretion. *Id.*

The Appellants assert that Ford's conduct undermined the integrity of the litigation because Ford reached out to the Appellants and asked each entity to execute a release. We disagree. Ford's solicitation of written releases in 1997 was plainly contemplated by the parties because it was expressly stated in Paragraph 23 of the Sales and Service Agreement. Moreover, Ford's conduct did nothing to undermine the integrity of the litigation because the releases that Ford obtained merely memorialized the substance of Paragraph 23. Therefore, the District Court did not abuse its discretion by declining to grant relief to the Appellants under Rule 23(d).

**IV.    Conclusion**

For the foregoing reasons, we will affirm the judgment of the District Court.