# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF LANSING,

       Plaintiff-Appellant,

v

DEPARTMENT OF TECHNOLOGY
MANAGEMENT AND BUDGET,

       Defendant-Appellee.

UNPUBLISHED
February 20, 2018

No. 336273
Court of Claims
LC No. 16-000220-MK

Before: MURPHY, P.J., and O'CONNELL and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff, the City of Lansing (the City), appeals as of right the Court of Claims' order granting summary disposition to defendant, the Department of Technology Management and Budget (the State), under MCR 2.116(C)(8) (failure to state claim) and (C)(10) (no genuine issue of material fact). We affirm.

## I. BACKGROUND

This case arises from the exchange of property and a subsequent lease between the parties. In 2001, the parties began a development project to provide parking to certain State employees. To facilitate the project, the Legislature authorized a property exchange between the parties in 2001 PA 92. Section (3)(6)(a) of 2001 PA 92 required the property conveyed to the City to "be used for a project that will include city owned parking." Section (3)(6)(b) provided:

> The city of Lansing shall cause to be provided to the state of Michigan, within the parcel of property described in subsection (1), not less than 400 or more than 500 reserved parking spaces for senate employees for a period of not less than 50 years. Senate employees who are designated to park in these spaces shall pay a rate of not more than $40.00 per month, adjusted annually by the Detroit consumer price index.

The City made an offer to purchase the property pursuant to 2001 PA 92. The offer proposed that the City and the State exchange quitclaim deeds for the properties to be exchanged. The offer provided that each party's delivery of its quitclaim deed fully discharged its contractual obligations unless otherwise stated. Paragraph 11 of the offer memorialized the legislation's mandate that the City use the property to provide parking to the State:

-1-

Upon completion of the project on the site, [the City] and [the State] agree that [the City] shall cause to be provided to the State of Michigan, within the Property, (1) not less than 400 or more than 500 reserved parking spaces for senate employees for a period of not less than 50 years; (2) The State of Michigan shall pay $100.00 per month for each space, with the non-debt service portion of that rate adjusted annually by the Detroit consumer price index[;] (3) Senate employees who are designated to park in these spaces shall be made third party beneficiaries under said agreement and shall pay the State of Michigan a rate of not more than $40.00 per month, adjusted annually by the Detroit consumer price index. This paragraph shall survive the closing, and shall only be satisfied and extinguished by a valid recordable document or binding contract that runs with the land that sets forth essentially the same terms.

The State then executed a quitclaim deed transferring the State's property to the City. The quitclaim deed also contained a provision repeating the terms of the City's obligation to provide parking.

The City and Boji Group of Lansing, LLC, a private development group, entered into a lease agreement with the State in December 2001. The City agreed to lease 400 parking spaces to the State with the option to reserve up to 100 more parking spaces for the lease term. Each year, the State had the option to lease an additional 500 spaces, if available. The lease agreement delineated ten five-year terms, spanning the 50 years from January 1, 2004 through December 31, 2053, increasing the rent each year by 3% and giving the State the option to extend the lease every five years. The lease agreement permitted the State to cancel the lease "during any period of possession" with 90 days' notice. The lease agreement contained an integration clause stating that the agreement represented "the entire agreement between the parties with this regard to this transaction . . . ." The agreement also stated that it met the requirements of 2001 PA 92.

In July 2015, the State notified the City that the State did not intend to extend the lease for an additional term. The City subsequently filed a complaint against the State in the Court of Claims, alleging a breach of contract and an anticipatory breach of contract because the lease, the offer to purchase, and 2001 PA 92 required the State to lease 400 to 500 parking spaces for 50 years. The State responded by moving for summary disposition under MCR 2.116(C)(8) and (C)(10). The State argued that the lease permitted the State not to renew the lease. The City maintained that the lease permitted the State to cancel the lease only with respect to the additional 500 parking spaces beyond the 400 to 500 spaces specified in 2001 PA 92.

The Court of Claims granted the State's motion for summary disposition under MCR 2.116(C)(8) and (C)(10). The Court of Claims determined that the lease agreement permitted the State to cancel the lease at any time. The Court of Claims rejected the City's argument that 2001 PA 92 or the offer of purchase imposed a rental obligation on the State; rather, the City was only required to make those spaces available for rent if the State chose to rent them. The Court of Claims described 2001 PA 92 and the offer of purchase as foreshadowing a future agreement, which was the lease agreement the parties ultimately signed. The Court of Claims ruled that the State did not breach the terms of the lease.

## II. DISCUSSION

The City now contests the grant of summary disposition. This Court reviews de novo a decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We also review de novo matters of contract interpretation. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007).

Summary disposition under MCR 2.116(C)(8) is proper if "[t]he opposing party has failed to state a claim on which relief can be granted." "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Maiden*, 461 Mich at 119. The trial court properly grants summary disposition under MCR 2.116(C)(8) if "the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted). Summary disposition under MCR 2.116(C)(10) is warranted if there is no genuine issue of material fact when viewing the evidence in the light most favorable to the nonmoving party. *Lakeview Commons Ltd Partnership v Empower Yourself, LLC*, 290 Mich App 503, 506; 802 NW2d 712 (2010).

To establish a breach of contract, the plaintiff must show that "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). A claim of anticipatory breach is available if "a party to a contract unequivocally declares the intent not to perform[.]" *Stoddard v Mfr Nat'l Bank of Grand Rapids*, 234 Mich App 140, 163; 593 NW2d 630 (1999). The purpose of analyzing a contract is to determine the parties' intent. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). The unambiguous language of the contract reflects the intent of the parties, so we enforce the contract as written. *Id*. When interpreting a contract, we give the "words their plain and ordinary meanings." *Coates*, 276 Mich App at 503. We "may not impose an ambiguity on clear contract language." *Id*. A contract is ambiguous if two or more provisions "irreconcilably conflict with each other or when [a term] is equally susceptible to more than a single meaning." *Id*. (quotation marks and citations omitted; alteration in original).

In this case, the lease constitutes a valid contract between the parties. The lease states that the State agreed to rent at least 400 parking spaces from the City at a specified rate for a five-year term with the option to renew the initial term in five-year increments up to a total of 50 years. The lease also specifies that the State was permitted to cancel the lease at any time by providing 90 days' notice to the City. Contrary to the City's arguments, that cancellation provision does not create any ambiguity or conflict with the integration clause in the lease or with 2001 PA 92's requirements. 2001 PA 92 imposed an obligation on the City to make 400 to 500 parking spaces available for State Senate employees for at least 50 years. The only reciprocal obligation the legislation imposed upon the State was the requirement to pay a specific rate for the rented spaces. The lease met those requirements because it required the City to provide the State with not less than 400 parking spaces at the specified rate and set an initial term for this obligation. The lease also satisfied the 50-year term requirement by giving the State the option to renew the initial lease term in a series of five-year terms for up to 50 years. The cancelation provision in the lease does not conflict with these requirements because 2001 PA 92 did not place any continuing obligation on the State to rent the parking spaces for the entire 50-year term. Therefore, the Court of Claims did not err by concluding that the lease agreement was unambiguous and by enforcing the agreement as written.

Moreover, the Court of Claims did not err by concluding that the lease satisfied and extinguished paragraph 11 of the offer to purchase, which repeated the terms of the City's obligation to make the parking spaces available to the State. The lease set forth essentially the same terms as paragraph 11 because both the lease and paragraph 11 required the City to make 400 to 500 parking spaces available to State Senate employees for at least 50 years at the specified rate. Although paragraph 11 did not contemplate splitting the 50-year term into five-year renewable terms, that distinction does not defeat the conclusion that the lease set forth "essentially the same" terms as paragraph 11. Both paragraph 11 and the lease obligate the City to provide the requisite number of parking spaces to the State for 50 years, and the lease agreement permits only the State to cancel the lease unilaterally at any time. Nothing in paragraph 11 prohibits the State from canceling the 50-year parking obligation imposed upon the City. Therefore, the lease set forth essentially the same terms as paragraph 11, so it satisfied and extinguished paragraph 11 upon its execution.

In sum, the lease's cancellation provision did not conflict with the lease's integration clause or the terms of 2001 PA 92, and the lease satisfied and extinguished paragraph 11 of the offer to purchase. The lease unambiguously permitted the State to cancel the lease at any time by providing 90 days' notice to the City. The State cancelled the lease according to its terms, so the State did not breach, or anticipatorily breach, the lease agreement. The Court of Claims did not err by granting the State's motion for summary disposition.

The City also makes a promissory estoppel claim for the first time on appeal. "This Court need not address an issue that is raised for the first time on appeal because it is not properly preserved for appellate review." *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 318; 885 NW2d 892 (2016). Therefore, we decline to review this issue.

We affirm.

/s/ William B. Murphy
/s/ Peter D. O'Connell
/s/ Kirsten Frank Kelly