*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF DOROTHY M. GARST,

      Plaintiff/Counterdefendant-Appellee,

UNPUBLISHED
April 25, 2024

v

3G PROPERTY MANAGEMENT, LLC,

      Defendant/Counterplaintiff-Appellant.

No. 367432
Monroe Circuit Court
LC No. 2022-145557-CK

Before: REDFORD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant, 3G Property Management, LLC ("3G"), appeals as of right the order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of plaintiff, the Estate of Dorothy M. Garst.[1] We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This is a familial dispute involving a mother, Dorothy M. Garst, her four sons—Ronal Garst, Roger Garst, Rodney Garst, and Richard Garst—and their respective businesses. In 2018, Dorothy filed a lawsuit (the "underlying lawsuit"), *Dorothy M. Garst v Ronal O. Garst, et al,* Monroe Circuit Court, Case No. 18-141055-CZ, naming as defendants her sons, 3G, and the family business, Garst LP Gas, LLC ("Garst LP Gas"). Dorothy alleged Ronal impermissibly conveyed her interest in two properties to 3G. Richard filed a cross-claim against the other defendants. Dorothy later settled against Ronal, Rodney, Roger, 3G, and Garst LP Gas by entering into a settlement agreement (the "Settlement Agreement"). Richard's cross-claim remained open.

---

[1] This case was initiated by Dorothy M. Garst in her individual capacity. Dorothy died during the pendency of these proceedings. The trial court substituted the Estate of Dorothy M. Garst as the plaintiff in this case by stipulation of the parties. We refer to Dorothy in her individual capacity, as "Dorothy." The term "plaintiff" refers to Dorothy and the Estate of Dorothy M. Garst, collectively.

Richard filed for bankruptcy after the Settlement Agreement was executed. As part of his plan of reorganization related to the bankruptcy, Richard entered into a "Stock Purchase Agreement" with Ronal, Rodney, Roger, and Garst LP Gas for the purchase of Richard's shares in Garst LP Gas at $800 per share. Richard's bankruptcy petition was later dismissed. Richard's cross-claim was dismissed by stipulation of the parties.

Plaintiff then filed this complaint seeking, in part, specific performance by 3G under the Settlement Agreement—specifically, plaintiff demanded that 3G convey certain real property to plaintiff. Plaintiff later moved for partial summary disposition under MCR 2.116(C)(10) regarding its claim for specific performance. The trial court agreed there was no genuine question of material fact that 3G was obliged, under the terms of the Settlement Agreement, to convey the real property to plaintiff. It therefore granted summary disposition. This appeal followed.

## II. SETTLEMENT AGREEMENT

3G argues the trial court erred when it granted plaintiff's motion for partial summary disposition. In 3G's view, the relevant condition precedent of the Settlement Agreement was not satisfied, and, therefore, plaintiff was not entitled to a favorable judgment. We disagree.

## A. STANDARD OF REVIEW

Motions for summary disposition are reviewed de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Id*. at 120. "[T]he moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the movant satisfies this burden,

> The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. [*Id*.]

A trial court properly grants a (C)(10) motion for summary disposition when "the opposing party fails to present documentary evidence establishing the existence of a material factual dispute[.]" *Id*. at 363.

This case also involves questions of contractual interpretation, which this Court reviews de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

> Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement. When interpreting a contract, our primary obligation is to give effect to the parties' intention at the time they entered into the contract. To do so, we examine the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written[.] [*Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016) (quotation marks and citations omitted.)]

## B. LAW AND ANALYSIS

3G's argument as to this issue pertains to the following condition precedent in the Settlement Agreement:

> (e) In exchange for the settlement of the Dispute and Lawsuit, 3G will grant to Dorothy an option with the duration of her lifetime for the land transferred to 3G in the March 2018 transactions described in the Recitals above. This option will be further documented by separate agreement executed by 3G and Dorothy concurrently with this Settlement Agreement (or as close to concurrently as possible), and will cause 3G to transfer the land at issue to Dorothy if, during her lifetime:

> (*i*) Richard and Defendants settle Richard's claims in the Lawsuit short of trial by Defendants buying or redeeming all of Richard's shares of Garst LP Gas (including those designated to go to him from the Orville Trust) at a price of $800 per share, offset by an amount of money as negotiated and agreed to by Defendants and Richard to account for the debts paid for his and [Dorothy's business'] benefit as a result of the March 2018 transactions, or such other price as negotiated and agreed to by the Defendants and Richard.[2]

Under the plain terms of the Settlement Agreement, 3G was required to convey the real property to Dorothy if Richard and the cross-claim defendants "settle[d]." A "settlement," as defined by subsection (2)(e)(*i*), occurs when: (1) the cross-claim defendants purchase all of Richard's shares in Garst LP Gas; and (2) the purchase price of the shares is $800 per share. So long as these actions take place "short of trial," the settlement of Richard's claims is perfected.

Richard entered into a Stock Purchase Agreement in which he agreed to sell his shares in Garst LP Gas to Ronal, Rodney, Roger, and Garst LP Gas. The purchase price of these shares was "$800 per share." Further, the Stock Purchase Agreement was completed without the necessity of trial. Richard's cross-claim was "settled" under the terms provided by subsection (2)(e)(*i*). As such, 3G was required to "cause 3G to transfer the land at issue to Dorothy[.]"

On appeal, 3G claims the terms of the Settlement Agreement were not satisfied and therefore plaintiff is not entitled to specific performance. For example, 3G claims that the trial court misinterpreted the meaning of the term "settle" to conclude that Richard's cross-claim was settled under the terms of the Settlement Agreement. According to 3G, "the word 'settle' has a specific meaning and significance [and] its inclusion in the Settlement Agreement should be given effect." 3G offers several dictionary definitions of the term "settle." Certainly, "[d]ictionary definitions may be used to ascertain the plain and ordinary meaning of terms undefined in an agreement." *Coates v Bastian Bros, Inc*, 276 Mich App 498, 504; 741 NW2d 539 (2007). But, in this case, the term "settle" was not undefined. The Settlement Agreement explained that Richard's

---

[2] There was another condition under subsection (2)(e)(*ii*) which, if satisfied, could have caused 3G to convey the real property to plaintiff. But, on appeal, the parties do not argue whether condition (2)(e)(*ii*) was satisfied, and their only arguments pertain to the satisfaction of subsection (2)(e)(*i*).

cross-claim was settled "by Defendants buying or redeeming all of Richard's shares in Garst LP Gas (including those designated to go to him from the Orville Trust) at a price of $800 per share[.]" Because the Settlement Agreement explicitly defined the term "settle" as it pertained to that contract, the trial court did not err by failing to consider the dictionary definitions of the term settle.

3G also argues that, because the settlement of Richard's cross-claim was in the context of Richard's bankruptcy proceedings, "Richard and his siblings did not agree to conclude the Prior Litigation." Again, contracts should be read according their "actual words." *Innovation Ventures*, 499 Mich at 507. The "actual words" of the Settlement Agreement simply state that subsection (2)(e)(*i*) is satisfied if the purchase of shares is made "short of trial[.]" The Stock Purchase Agreement was plainly made "short of trial[,]" and, therefore, the fact that the stock purchase was made in the context of Richard's bankruptcy proceedings is irrelevant.

Finally, 3G makes the confusing argument that Richard and the cross-claim defendants did not "reach[] an agreement to resolve the claims in the Prior Litigation." 3G contends "[t]here was no settlement agreement or writing that memorialized a mutual assent to the resolution of the Prior Litigation." 3G appears to believe that, to "settle" Richard's cross-claim under the terms of the Settlement Agreement, there must be some formal declaration that the parties are settling pursuant to the Settlement Agreement. But, the Settlement Agreement contains no such requirement. Because the definition of "settle" is plainly articulated by the Settlement Agreement's terms, it would be inappropriate for this Court to graft in the extra requirement that Richard and the cross-claim defendants needed to perfect a formal agreement to settle.

In sum, there is no genuine question of fact that the condition precedent under subsection (2)(e)(*i*) was satisfied. Therefore, the trial court did not err in granting summary disposition on this basis. 3G's arguments to the contrary do not demonstrate the trial court somehow misinterpreted the terms of the Settlement Agreement.

Affirmed.

/s/ James Robert Redford
/s/ Thomas C. Cameron
/s/ Anica Letica