# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

FARM BUREAU GENERAL INSURANCE
COMPANY,

       Plaintiff/Counter Defendant-
       Appellee,

v

ESTHER SUSIN,

       Defendant/Cross Defendant/Cross
       Defendant-Appellant,

and

LAKES COMMUNITY CREDIT UNION,

       Defendant/Cross Defendant/Third
       Party Plaintiff-Appellee/Cross
       Plaintiff,

and

ASSOCIATED ADJUSTERS, INC.,

       Defendant/Cross Plaintiff/Counter
       Plaintiff-Appellee/Cross Defendant,

and

R-VALUE CONCRETE STRUCTURES,

       Third Party Defendant/Cross
       Defendant-Appellee,

and

ARROW FINANCIAL SERVICES, DISCOVER
BANK, L.H. CONSTRUCTION CONCEPTS,
INC., RICH DAGENAIS, and LEOBARDO
HUANTES, JR.,

       Defendants.

UNPUBLISHED
March 10, 2016

No. 322017
Oakland Circuit Court
LC No. 2013-132618-CZ

---

-1-

Before: M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

In this dispute involving the replacement of a home after a fire, defendant, Esther Susin, appeals by right on her own behalf the trial court's final order granting the motion for summary disposition by third-party defendant, R-Value Concrete Structures (R-Value). On appeal, Susin argues that the trial court also erred when it granted summary disposition in favor of plaintiff, Farm Bureau General Insurance Company, cross-defendants Associated Adjuster's, Inc. (Associated Adjusters), and Lakes Community Credit Union (Lakes Credit Union). Because we conclude the trial court did not err when it granted the motions at issue, we affirm.

During the pendency of this appeal, we granted Farm Bureau's motion to affirm the trial court's order granting it summary disposition and allowing it to deposit the contested funds with the court under MCR 7.211(C)(3).[1] Consequently, we shall address only that portion of Susin's appeal involving Associated Adjusters, R-Value, and Lakes Credit Union.[2]

I. BASIC FACTS

This appeal is from one of three lawsuits involving the reconstruction of Susin's house after a fire in October 2010. Susin granted Lakes Credit Union a mortgage on her home to secure a note and named it as an additional on her homeowner's insurance policy with Farm Bureau. After her home was destroyed by fire, Susin filed a claim with Farm Bureau. In July 2011, Farm Bureau paid her $171,190 for the loss of the home, but not the contents. Susin demanded an appraisal for the loss of her personal property and hired Associated Adjusters to appraise her property. She authorized Farm Bureau to pay Associated Adjuster's fee out of any proceeds obtained through the appraisal. Farm Bureau agreed to pay an additional $83,810 under the policy in October 2012.

In February 2013, Farm Bureau issued two checks totaling $83,810. It made the checks payable to Susin, Lakes Credit Union, and Associated Adjusters. However, when a dispute arose over who among the co-payees was entitled to the insurance proceeds, Farm Bureau sued the co-payees in interpleader and asked the trial court to authorize it to deposit the full amount into an account with the court for disbursement after the parties litigated their claims.

In relevant part, Associated Adjusters sued Susin to recover its fee. The trial court granted Associated Adjusters' motion for summary disposition under MCR 2.116(C)(10), and eventually ordered the payment of $18,123.56 from the funds to Associated Adjusters.

---

[1] *Farm Bureau Gen Ins Co v Esther Susin*, unpublished order of the Court of Appeals, entered February 26, 2015 (Docket No. 322017), lv denied *Farm Bureau Gen Ins Co v Susin*, ___ Mich ___; 871 NW2d 185 (2015).

[2] The remaining parties are not involved in this appeal.

Lakes Credit Union also added by leave granted a claim against Susin for judicial foreclosure. It alleged that Susin violated the provision in her mortgage that required her to maintain the property to prevent it from deteriorating or decreasing and to promptly repair or restore the property. It asked the trial court to declare the entire $135,999.90 balance of Susin's note due immediately and authorize foreclosure against the mortgaged property. The trial court granted Lakes Credit Union's motion for summary disposition under MCR 2.116(C)(9) and (C)(10). It entered a judgment of foreclosure and set the redemption period at 30 days. The sheriff sold the property at auction to KKJ Investments, and the trial court confirmed the sale.

In August 2012, Susin contracted with R-Value to do certain concrete work for $59,796.47. After R-Value performed the contract, Susin withheld $15,790.14. Susin contended that certain windows were positioned lower than the building code allowed. R-Value maintained that the position of the windows corresponded to the blue prints and met the code as long as the proper windows were installed. Susin rejected R-Value's explanation. When the dispute could not be resolved, R-Value filed a claim of lien against the property. Lakes Credit Union brought R-Value into the case through a third-party complaint naming R-Value as a party with an interest in the interpleaded funds. And R-Value sued Susin for the amount withheld. R-Value moved for summary disposition on its cross-complaint under MCR 2.116(C)(10) and the trial court granted the motion. It then entered a judgment against Susin for $19,280.57.

Susin now appeals in this Court the trial court's orders granting summary disposition.

## II. SUMMARY DISPSOITION

### A. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2002).

### B. ANALYSIS

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the documentary evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, the trial court may grant the motion. *Id*.; MCR 2.116(C)(10). "[T]he moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence," and then the burden shifts "to the opposing party to establish that a genuine issue of disputed fact exists." *Quinto*, 451 Mich at 362. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *Id*. at 363.

## 1. ASSOCIATED ADJUSTERS

Susin's dispute with Associated Adjusters concerns whether it was entitled to a fee calculated as seven percent of all proceeds paid to Susin by Farm Bureau, or only seven percent of the additional proceeds. Susin implies that the contract is ambiguous because the fee schedule contradicts the scope of the contract.

Whether a contract is ambiguous is a question of law that we review de novo. *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). If the contract is ambiguous, its meaning is a question of fact for the jury. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 504; 741 NW2d 539 (2007). A contract is ambiguous if two provisions irreconcilably conflict with each other or when a term is equally susceptible to more than one meaning. *Id.* at 503. An unambiguous contract must be enforced according to its terms. *Id.*

The contract at issue required Associated Adjusters to "assist in the preparation, presentation and adjusting of insurance claims with Insurer(s)" for a comprehensive list of coverages, e.g., building, contents, loss of use, living expenses, etc. In exchange for these services, Susin agreed to pay Associated Adjusters the following fee:

> Payment: Insured(s) agree to pay and assigns to Adjuster ___% (not to exceed 10%) of amounts recovered under the Scope of Contract and paid by Insurer(s) in settlement of the loss. ["In settlement of the loss" includes payments made by Insurer(s) in full or partial resolution of the claim, including payments made by agreement, court judgment, mediation, arbitration, appraisal, and other forms of dispute resolution.]

Someone drew a line through the blank in the payment paragraph and handwrote above: "see attached fee schedule." The attached fee schedule provided:

> With respect to the building structure:
>
> > 1. The Public Adjusting fee shall equal:
> >
> > a) 25% of the sum of all Farm Bureau Insurance payments to the Insured and for the Insured's benefit that exceed $150,000.
> >
> > b) The building structure fee shall not exceed 7% of the sum of all Farm Bureau Insurance payments to the Insured and for the Insured's benefit.

The contract also contained a prominently placed merger clause, stating that "[t]his Contract constitutes the entire agreement between the parties and shall not be modified without the written agreement of both."

In ascertaining the meaning of a contract, we "give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Here, Susin agreed to pay Associated Adjusters a fee up to "7% of the sum of all Farm Bureau Insurance payments to the Insured and for the Insured's benefit." "All" means "the whole amount, quantity or extent." See

*Merriam-Webster's Collegiate Dictionary* (2003). As such, Susin plainly agreed to pay a fee calculated by using all the proceeds paid out on Susin's behalf by Farm Bureau.

Susin nevertheless argues that she understood the contract differently than Associated Adjusters, but this argument cannot prevail; courts presume that parties "understand the import of a written contract and had the intention manifested by its terms." *Zurcher v Herveat*, 238 Mich App 267, 299; 605 NW2d 329 (1999) (quotation marks and citation omitted); see also *Int'l Transp Ass'n v Bylenga*, 254 Mich 236, 239; 236 NW 771 (1931) ("This court has many times held that one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms.").

Susin argued below that attaching the fee schedule to the contract effectively amended the contract, thus rendering it unenforceable until approved by the Commissioner of the Office of Financial and Insurance Regulations. However, she cited no authority for her position below or on appeal, leaving it to us to search for authority to sustain or reject it. We decline to do so. See *Magee v Magee*, 218 Mich App 158, 161; 553 NW2d 363 (1996) ("A party may not leave it to this Court to search for authority to sustain or reject its position."). Likewise, because she failed to provide any meaningful argument or relevant authority to support her assertion that the fee. Consequently, she has abandoned these arguments. *Id*.

Finally, Susin asserts that Associated Adjusters' fee violates MCL 600.2516, which provides that "[n]o fee or compensation allowed by law, shall be demanded or received by any officer or person for any service, unless such service was actually rendered by him . . . ." However, this statute pertains to fees allowed for services mentioned in the Revised Judicature Act, MCL 600.101 *et seq*., and "done or performed in the several courts in this state, by the officers thereof, or in any proceeding authorized by law . . . ." MCL 600.2501. Because Associated Adjusters is not an officer of the court nor was its appraisal a court proceeding or service, MCL 600.2516 is inapplicable.

The trial court did not err when it granted Associated Adjusters' motion for summary disposition.

## 2. LAKES CREDIT UNION

Lakes Credit Union supported its motion with documentary evidence; specifically, it relied on its mortgage, the coverage limits of Susin's homeowner's insurance policy, the evidence of the claims by Associated Adjusters and R-Value against the interpleaded insurance proceeds, an accounting of the construction trust fund showing a remaining balance of $6,291.54, an estimate from a licensed residential builder showing that it would take $316,000 to complete the rebuild, the expiration of Susin's building permits, and the amount due on her mortgage. It also pointed to Susin's acknowledgement of the mortgage provisions under which it sought foreclosure and her admission that construction had ceased on the property and that the elements had damaged some parts of the incomplete structure. Susin contended, however, that completion of the house was economically feasible because Lakes Credit Union's estimate of the cost of completion was inflated, and the insurance proceeds and other monies due her were sufficient to finish the project. She also maintained that Lakes Credit Union delayed construction by disbursing funds to a contractor without her authorization, and that Farm Bureau,

Lakes Credit Union, Associated Adjusters, and R-Value contributed to the delay in construction by preventing the release of the interpleaded funds.

Considering the evidence in the light most favorable to Susin, we conclude that the trial court did not err by granting Lakes Credit Union's motion for summary disposition. Because Lakes Credit Union met its initial burden to support its position by "affidavits, depositions, admissions, or other documentary evidence," the burden shifted to Susin "to establish that a genuine issue of disputed fact exists." *Quinto*, 451 Mich at 362. She did not meet this burden.

Susin's claim of sufficient funds was speculative at best, requiring that she prove that Associated Adjusters and R-Value were not entitled to the amounts they demanded, and that Lakes Credit Union was liable to her for triple damages for the conversion of funds allegedly paid without her authorization, plus damages for delaying reconstruction. Yet she failed to provide evidence of the alleged conversion or a delay upon which her claim for damages could be sustained. She argued that Lakes Credit Union's estimate for completing the house was inaccurate, but she supported that contention with personal assertions of how large the house was and how much it would cost per square foot to build it. To survive summary disposition, Susin had to offer more than denials and allegations. She had to present documentary evidence establishing the existence of a material factual dispute. *Id*. at 363. Because she failed to present evidence sufficient to establish a question of fact on these issues, the trial court did not err when it granted Lakes Credit Union's motion for summary disposition. *Id*.[3]

### 3. R-VALUE

R-Value attached to its summary disposition motion a copy of the parties signed contract, copies of blueprints, a materials list, e-mails evidencing the dispute between Susin and R-Value's owner, Jake Vierzen, R-Value's claim of lien, and Vierzen's affidavit stating, among other things, that R-Value had completed the work according to the specifications it was given, and that Susin owed $15,790.47 on the contract. Susin claimed that R-Value performed its work inadequately by positioning openings for some of the windows lower than allowed by the building code. However, Susin failed to provide documentary evidence sufficient to create a genuine issue of material fact regarding the improper placement of the windows. The e-mails she attached to her answer to R-Value's motion establish the terms of the dispute with R-Value, but they do not create a genuine issue of material fact regarding whether there were actual deficiencies in R-Value's performance. Having failed to meet her burden, the trial court did not err in granting R-Value's motion for summary disposition motion under MCR 2.116(C)(10). *Id*.

Susin's sole objection to the amount of R-Value's judgment stems from her insistence that R-Value was not entitled to its full contract price because it abandoned the contract by not repairing the alleged flaws in its work. Susin failed to establish this allegation, and provided the trial court with no other reason to deny R-Value's motion. Based on the foregoing, it cannot be said that the trial court erred in the amount it awarded R-Value.

---

[3] Because the trial court properly granted the motion under MCR 2.116(C)(10), we decline to address whether it was also appropriate to grant summary disposition under (C)(9).

## C. REDEMPTION PERIOD

Susin next contends that the trial court erred by denying her motion to amend the redemption period from 30-days to six months. MCL 600.3140(1) sets the redemption period in judicial foreclosures at six months. Lakes Credit Union requested a 30-day redemption period because the property was unoccupied for purposes of MCL 600.3241a. MCL 600.3241a applies to foreclosures by advertisement and establishes the requirements for a conclusive presumption that the premises have been abandoned. Ultimately, we need not address whether MCL 600.3241a applies to judicial foreclosures because, even if it does, it requires property to be abandoned, not simply unoccupied. Susin's actions in this litigation show that she had not abandoned the property.

Nevertheless, even though the trial court did err by setting a 30-day redemption period, Susin is not entitled to relief because she cannot establish prejudice. See *Murchie v Standard Oil Co*, 355 Mich 550, 560; 94 NW2d 799 (1959). At no time during the course of these proceedings did Susin show that she had the money to redeem her mortgage. Her insurance proceeds were subject to the claims of creditors, the amounts she anticipated recovering from Lakes Credit Union depended on damages she had not proved, and although she said she was seeking grants under a veteran's assistance program, she never presented any evidence that she had a reasonable chance of obtaining the funds. In short, there is no record evidence indicating that Susin could have redeemed her mortgage, even if she had been given six-months to redeem the property. Under the circumstances, any error was harmless beyond a reasonable doubt. See *Heshelman v Lombardi*, 183 Mich App 72, 85; 454 NW2d 603 (1990).

## D. THIRD-PARTY COMPLAINT

Susin next contends that the trial court erred in denying her motion to dismiss Lakes Credit Union's third-party complaint bringing R-Value into the litigation. MCR 2.204(A)(1) provides, in relevant part, that "any time after commencement of an action, a defending party, as a third-party plaintiff, may serve a summons and complaint on a person not a party to the action who is or may be liable to the third-party plaintiff for all or party of the plaintiff's claim." Generally, the potential third-party defendant must be liable to the third-party plaintiff, through either indemnity, subrogation, contribution, or some other theory. See *Husted v Consumers Power Co*, 376 Mich 41, 47; 135 NW2d 370 (1965).

In any event, to the extent that the trial court might have erred when it allowed Lakes Credit Union to bring R-Value into the litigation under MCR 2.204(A)(1), that error would be harmless because the trial court had the authority to allow R-Value to be joined under MCR 2.207. See MCR 3.603(A)(2). MCR 2.207 provides that "[p]arties may be added or dropped by order of the court on motion of a party or on the court's own initiative at any stage of the action and on terms that are just." "MCR 2.207 is not of itself a blanket authorization for adding parties. That is, parties who are brought in under the second sentence of this rule must be parties who are properly joined under MCR 2.203 to 2.206." 2 Mich Ct Rules Prac, Text § 2207.3 (6th ed.). MCR 2.206(A)(2)(b) allows all persons to be joined together into one action as defendants "if their presence in the action will promote the convenient administration of justice." In this case, adding R-Value promoted the convenient administration of justice by including as defendants all those whose claims arose from the destruction and reconstruction of the subject

property; including R-Value allowed resolution of the lien-based dispute between R-Value and Susin without additional inconvenience and expense to the parties, and prevented an additional drain on judicial resources.

There were no errors warranting relief.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro