# STATE OF MICHIGAN

# COURT OF APPEALS

JACKSON LAND HOLDING COMPANY, LLC,

        Plaintiff-Appellant,

v

CITY OF DETROIT, DETROIT PUBLIC
LIBRARY, DETROIT ZOOLOGICAL SOCIETY,
HURON CLINTON METROPOLITAN
AUTHORITY, WAYNE COUNTY REGIONAL
EDUCATIONAL SERVICE AGENCY,
COUNTY OF WAYNE, and WAYNE COUNTY
COMMUNITY COLLEGE DISTRICT,

        Defendants-Appellees.

UNPUBLISHED
December 13, 2016

No. 328418
Wayne Circuit Court
LC No. 13-009859-CK

Before: JANSEN, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals as of right the order denying plaintiff's motion for summary disposition and granting summary disposition in favor of defendants in this property tax case. We affirm.

Plaintiff first argues that the trial court erred by granting summary disposition in favor of defendants because the federal Multifamily Mortgage Foreclosure Act (MMFA), 12 USC 3701 *et seq.*, extinguished the 2012 property tax lien for the subject real property. We disagree.

We review a trial court's grant or denial of a motion for summary disposition de novo. *Sylvan Twp v City of Chelsea*, 313 Mich App 305, 315; 882 NW2d 545 (2015). The trial court denied plaintiff's motion for summary disposition under MCR 2.116(C)(10) and granted summary disposition in favor of defendants under MCR 2.116(I)(2). As discussed in *Bonner v City of Brighton*, 495 Mich 209, 220-221; 848 NW2d 380 (2014):

> Summary disposition is appropriate under MCR 2.116(C)(10) if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when, viewing the evidence in a light most favorable to the nonmoving party, the record which might be developed . . . would leave open an issue upon which reasonable minds might differ." In deciding

-1-

whether to grant a motion for summary disposition pursuant to MCR 2.116(C)(10), a court must consider "[t]he affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties," in the light most favorable to the nonmoving party. [Citations omitted; alterations in original.]

Similarly, " 'The trial court appropriately grants summary disposition to the opposing party under MCR 2.116(I)(2) when it appears to the court that the opposing party, rather than the moving party, is entitled to judgment as a matter of law.' " *Sherry v East Suburban Football League*, 292 Mich App 23, 34; 807 NW2d 859 (2011) (citation omitted). The interpretation of a statute also comprises a legal question, which is subject to de novo review. *Herman v Berrien Co*, 481 Mich 352, 358; 750 NW2d 570 (2008).

This dispute pertains to the liability for payment of the 2012 property taxes for Lafayette Towers. Plaintiff purchased the property from the city of Detroit on November 30, 2012, for the sum of $5,849,330. The previous owner of the property, Zulu 117, LLC, defaulted on its 2009 mortgage, which "was insured by the United States Secretary of Housing and Urban Development [(HUD)] (the Secretary) pursuant to Section 223f of the National Housing Act, 12 USC Section 1715n, (f), for the purpose of providing multifamily housing[.]" The Detroit City Council authorized the city of Detroit to exercise its right of first refusal to purchase the property and then to convey the property to a developer. The city of Detroit issued a request for proposals requiring a minimum purchase price of $5,849,330, in addition to an estimated $10,000,000 in repairs to be completed within 18 months of closing. The request for proposals contained, in relevant part, the following provision:

**Prorations and Security Deposits**

Prorations – There will be no proration of any type at Closing including, but not limited to income, expenses, real estate taxes, water and sewer charges, whether collected or uncollected, paid or unpaid. In addition, HUD/City/DEGC assumes no liability for any liens, whether known or unknown, including without limitation expenses incurred but not billed or received, as of the day of Closing.

In accordance with the MMFA, notice was issued regarding the sale of the property. The notice instructed that "[t]he successful bidder will pay all conveyance fees, all real estate and other taxes that are due on or after the date of closing and all other costs associated with the transfer of title." On November 30, 2012, HUD took title of the property by bidding its $25,423,101.64 mortgage debt. The property was conveyed to HUD for the sum of $1 and other consideration. HUD subsequently conveyed the property to the city of Detroit by a quitclaim deed, in accordance with an earlier contract of sale. The contract of sale between HUD and the city of Detroit contained a provision that "[t]here will be no proration of any type at Closing including, but not limited to income, expenses, real estate taxes, water and sewer charges, whether collected or uncollected, paid or unpaid."

On November 30, 2012, the city of Detroit conveyed the property by quitclaim deed to plaintiff for the sum of $5,849,330, with an obligation to undertake and complete substantial

repairs. The contract of sale executed by the city of Detroit and plaintiff, on this same date, included a provision stating:

> There will be no pro-ration of any type at Closing including, but not limited to income, expenses, real estate taxes, water and sewer charges, whether collected or uncollected, paid or unpaid. In addition, the City assumes no liability for any liens, whether known or unknown, including without limitation expenses incurred but not billed or received, as of the day of Closing.

For this transaction, the title insurance commitment provided the following handwritten addition on Schedule B-II of the exceptions: "Taxes to remain unpaid at closing also subject to any unpaid water bills." The same section also indicated, "2012 summer taxes due in the amount of $403,389.96, of which 15,504 is a special assessment for due from DPW."

> The purpose of the MMFA has been recognized as follows:

> "The MMFA was enacted to eliminate the conditions that seriously impair the Secretary's ability to protect the Federal financial interest by providing a more expeditious procedure for the Secretary's foreclosure of mortgages. It sets out the procedure for selecting a commissioner and designating his or her duties, the prerequisites to foreclosure, and the specific notice of default that is to be given." [*C D Barnes Assoc, Inc v Grand Haven Hideaway Ltd Partnership*, 406 F Supp 2d 801, 806 (WD Mich, 2005) (citation omitted).][1]

In accordance with the MMFA, foreclosure proceeds are subject to the following disposition:

> Money realized from a foreclosure sale shall be made available for obligation and expenditure-

> (1) first to cover the costs of foreclosure provided for in [12 USC 3711];

> (2) then to pay valid tax liens or assessments prior to the mortgage;

> (3) then to pay any liens recorded prior to the recording of the mortgage which are required to be paid in conformity with the terms of sale in the notice of default and foreclosure sale;

> (4) then to service charges and advancements for taxes, assessments, and property insurance premiums;

> (5) then to the interest;

---

[1] Cases from lower federal courts are not binding on this Court, but are often persuasive. See *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 480 n 12; 822 NW2d 239 (2012).

(6) then to the principal balance secured by the mortgage (including expenditures for the necessary protection, preservation, and repair of the security property as authorized under the mortgage agreement and interest thereon if provided for in the mortgage agreement); and

(7) then to late charges.

Any surplus after payment of the foregoing shall be paid to holders of liens recorded after the mortgage and then to the appropriate mortgagor. [12 USC 3712.]

Further, 12 USC 3713(c) provides, in relevant part:

A purchaser at a foreclosure sale held pursuant to this chapter shall be entitled to possession upon passage of title to the mortgaged property, subject to an interest or interests senior to that of the mortgage and subject to the terms of any lease of a residential tenant for the remaining term of the lease or for one year, whichever period is shorter.

Plaintiff argues that the lack of any additional or surplus proceeds following payment of the sale proceeds by the city of Detroit to HUD resulted in the extinguishment of any liens, including the lien for the 2012 property taxes, because they were incurred after the foreclosed 2009 mortgage insured by HUD. Plaintiff further asserts that the lack of explicit language indicating liability for the unpaid taxes in the contract of sale and other documents precluded a determination that it had assumed responsibility for such costs as part of the property purchase. In further support of its position, plaintiff relies on a federal regulation, which provides, in relevant part, "The priority of the Secretary's lien shall be determined by the Federal first-in-time first-in-right rule. State laws affording priority to liens recorded after the mortgage are preempted." 24 CFR 27.40(a) (2016).

Caselaw discussing the MMFA and its relationship to the federal first-in-time first-in-right rule typically addresses or deals with the prioritization of construction liens for a HUD foreclosure conducted under the Act. For example, as explained in *C D Barnes Assoc, Inc*, 406 F Supp 2d at 807:

The Supreme Court "has consistently held that federal law governs questions involving the rights of the United States arising under nationwide federal programs." In this case, the federal law governing priority of claims to mortgage foreclosure proceeds is set forth in § 3712. Moreover, in accordance with that statute, HUD has promulgated a regulation governing the disposition of foreclosure proceeds which requires a federal rule of priority: "The priority of the Secretary's lien shall be determined by the Federal first-in-time first-in-right rule. State laws affording priority to liens recorded after the mortgage are preempted." Thus, under HUD regulations, the MMFA preempts state construction lien law whenever HUD conducts a foreclosure sale pursuant to the MMFA. [Citations omitted.]

The trial court determined that 12 USC 3712 did not apply in this case. However, even assuming that plaintiff is correct that 12 USC 3712 applies to the circumstances of this case, the statute did not extinguish the 2012 property tax lien. Plaintiff appears to conflate or expand the statutory provisions to suggest that preemption of state law pertaining to the priority of liens constitutes the equivalent of extinguishing the liens. Yet, the statutory language relied upon by plaintiff is not consistent with such a position. The federal statute and regulation, 12 USC 3712 and 24 CFR 27.40 (2016), address only the priority of liens and the disbursement of foreclosure proceeds. Nowhere is the word "extinguish" found within the cited provisions. In fact, 12 USC 3712 specifically addresses the payment of liens "recorded after the mortgage" as part of the recognized order of priority of payment from the sale proceeds. Thus, even assuming that the MMFA applies in this circumstance, it does not extinguish the 2012 property tax lien. Because the MMFA does not extinguish the lien, the property tax liens are continuing. See MCL 211.40.

Plaintiff further argued in the trial court the absence of notice pertaining to the tax liability. Contrary to plaintiff's contention, the request for proposals specifically noted the absence of any proration for taxes and other liens for the property and contains an explicit disavowal of responsibility by the city of Detroit and HUD for such expenses. The exclusions to the title commitment detailed the taxes owed and specified their unpaid status. The contracts of sale executed between HUD and the city of Detroit, and in turn between the city of Detroit and plaintiff, indicated the absence of any proration, again indicating disavowal by the seller of responsibility for any taxes or other expenses at the closing. Similarly, the notice of default and foreclosure forewarned, "The successful bidder will pay all conveyance fees, all real estate and other taxes that are due on or after the date of closing and all other costs associated with the transfer of title." In addition, plaintiff substituted for the prior owner of the property before proceedings in the Michigan Tax Tribunal seeking reassessed taxable values on the property for tax years 2010 through 2013, which clearly demonstrates an awareness of the taxes paid and outstanding. Plaintiff participated in a consent judgment within the Tax Tribunal, wherein it received a refund of excess prior taxes paid by its predecessor in interest and agreed to a time frame for collection of the revised taxes due and interest accrual. These documents, individually and collectively, demonstrate that plaintiff received adequate notice of the existence of tax liens on the property.

Next, plaintiff asserts error by the trial court in failing to find that the proration provision within the contract of sale was ambiguous. We disagree.

Whether contractual language is ambiguous presents a question of law that is reviewed de novo. *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 563; 596 NW2d 915 (1999). The contract provision cited by plaintiff states:

> (a) <u>Pro-rations</u> – There will be no pro-ration of any type at Closing including, but not limited to income, expense, real estate taxes, water and sewer charges, whether collected or uncollected, paid or unpaid. In addition, the City assumes no liability for any liens, whether known or unknown, including without limitation expenses incurred but not billed or received, as of the day of Closing.

Our purpose in analyzing a contract is to ascertain the intent of the parties. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). "[A]n

unambiguous contractual provision is reflective of the parties' intent as a matter of law" and is to be enforced as written. *Id.* When interpreting a contract, courts are required to give the "words their plain and ordinary meanings," and are not permitted to "impose an ambiguity on clear contract language." *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007). Ambiguity is found to exist if two or more provisions " 'irreconcilably conflict with each other,' " or when a term is construed to express multiple meanings within the context of the contract. *Id.*, quoting *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). When engaged in the analysis of written contractual terms, a court is required to give effect to every word, phrase, and clause, and "avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp*, 468 Mich at 468.

The contract of sale makes clear that the real estate taxes will not be prorated. While the contract of sale did not explicitly state plaintiff's responsibility for the outstanding taxes on the property, the document did explicitly disavow any responsibility for such charges on the part of the city of Detroit as the seller. The disavowal of liability by the city of Detroit was clear, eliminating the city's responsibility for any such lien. Therefore, we conclude that the contract of sale was not ambiguous with regard to plaintiff's liability for the real estate taxes.

Plaintiff's reliance on MCL 211.2 to support its contention of ambiguity is without merit. The cited statute pertains to a seller's responsibility for a portion or proration of taxes for the 12 months preceding the sale of real property. First, contrary to the situation outlined in MCL 211.2(3), the subject property was not "acquired for public purposes by purchase or condemnation." Second, the proration of liability for the taxes is not appropriate for imposition on the city of Detroit, premised on the existence of "an agreement to the contrary" as recognized in MCL 211.2(4). As such, neither statutory subsection is applicable and therefore do not necessitate the proration of the taxes in the circumstances of this case.

It is also noteworthy that plaintiff voluntarily entered into a separate contractual agreement with regard to the taxable value of the property. As explained above, in the Michigan Tax Tribunal, plaintiff entered into a consent judgment, which reduced the taxable value of the property for tax years 2010 through 2013, and resulted in plaintiff's receipt of a refund of taxes paid by its predecessor in interest for tax years 2010 and 2011. Based on the agreement of the parties, the Tribunal ordered that "the officer charged with collecting or refunding the affected taxes shall collect taxes and any applicable interest or issue a refund as required by this Consent Judgment within 28 days of the entry of the Consent Judgment." Thus, plaintiff agreed to the taxable value of the property for the 2012 tax year and agreed to the collection of the taxes. Therefore, as explained above, plaintiff was provided with ample notice of its requirement to pay the 2012 property tax lien, and the contract between plaintiff and the city of Detroit is not ambiguous with regard to plaintiff's property tax liability.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra