# STATE OF MICHIGAN

# COURT OF APPEALS

RONALD ABDELLA,

Plaintiff-Appellant,

v

STATE STREET REALTY, LLC, and BRENDA
J. MCNALLY,

Defendants-Appellees.

UNPUBLISHED
May 10, 2018

No. 338081
Saginaw Circuit Court
LC No. 17-032131-CB

Before: SHAPIRO, P.J., and M. J. KELLY and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendants' motion for summary disposition under MCR 2.116(C)(10) on plaintiff's claim for specific performance of a real property purchase agreement. We affirm.

Plaintiff was a potential buyer of property located at 3215 E. Genesee Avenue in Saginaw, Michigan (the property). On December 7, 2016, Dale Krueger, president of Ashford Financial Group, purportedly sent a letter to Selma Garcia, a licensed real estate agent for defendant State Street Realty, LLC (SSR), indicating that plaintiff qualified for a line of credit up to $350,000. That same day, Garcia passed this information along to the owner of the property, defendant Brenda J. McNally.

On December 8, 2016, plaintiff offered to buy the property from McNally. The purchase price in the initial offer was $100,000 and closing was contingent on plaintiff procuring a "VA (type) mortgage loan in the amount of 100% of the purchase price." The initial offer gave plaintiff three days after the date of acceptance to apply for the mortgage. Relevant to the dispute on appeal, paragraph 3B of the offer stated as follows:

> Buyer may waive the mortgage contingency by written notice to Seller or Seller's Agent and pay cash as provided in paragraph A above. Buyer agrees to use his or her best efforts to obtain such commitment. If commitment is not obtained within 30 days of final acceptance of this offer, either party may terminate this Agreement by giving written notice to the other party and to the Listing and Selling Offices. If a commitment is obtained by [B]uyer prior to receipt of such written termination by the Listing Office, then the Agreement shall not be terminated.

-1-

McNally counteroffered, increasing the purchase price to $114,900, adding a provision for $1,500 in earnest money deposit, and making the purchase price payable by either cash or by conventional mortgage. McNally also altered the closing date, now requiring that it take place "on or before January 31, 2017."

Plaintiff made a counteroffer in return, agreeing with the $114,900 purchase price and the acquisition of a conventional mortgage, but changing the earnest money deposit amount to $1,000. Plaintiff's counteroffer stated that "all other terms remain the same." McNally accepted this last offer.

The day that the final draft of the purchase agreement was signed by McNally, Garcia emailed plaintiff to make him aware of key information, stating as follows:

> You must apply for your loan within 3 calendar days, and I will need a preapproval letter from your lender asap. I will need your loan officer's name and contact information. Also, I need to obtain from you a check for $1,000.00 earnest money made out to Century 21 Signature Realty tomorrow.

Garcia sent another email to plaintiff on December 23, 2016, which stated:

> I just want to highlight a few items regarding our accepted purchase agreement, just to make sure you are aware of deadlines, etc., and the impact on the contract.
>
> #3 – The method of payment offered was *New Mortgage*. Buyer had 3 days from final acceptance date (12-12-16) to apply for the loan. Buyer has 30 days from the acceptance date to obtain such commitment. That date is January 11, 2017. If the loan commitment is not obtained by that date both you and the Seller may exercise your right to terminate the agreement, in writing.
>
> #6 – Sale is to be closed on or before January 31, 2017 . . . .
>
> Final terms agreed upon on 12-12-[2016]
>
> Purchase price of $114,900
>
> Method of Financing Conventional Mortgage
>
> Close on or before January 31, 2016.
>
> **Yet needed from you is Lender Commitment, along with loan officer's name and contact information, no later than January 11, 2017. Commitment must include being able to close the loan no later than January 31, 2017.** If no commitment is obtained within this time frame, the contract may be terminated by either Buyer if Seller. ***If there is no loan commitment and you wish to purchase the home using cash, the Seller still has the option to terminate the contract, as the contract is currently based upon obtaining a Conventional Mortgage Loan. In order to change the terms of the contract to a cash purchase both Buyer and***

*Seller need to agree to a written addendum to the agreement to change the terms to cash.*

**It is my understanding that the Seller has secured a secondary offer on this property. It is extremely important all terms of the contract be met.**

On January 9, 2017, Garcia again emailed plaintiff, stating as follows:

I want to take a moment to once again clarify the terms of your contract to purchase 3215 East Genesee Avenue.

Wednesday, January 11, 2017 is the deadline for you to have secured a Conventional Mortgage commitment. Your lender must provide to me a written confirmation of such loan, including the estimated close date of the loan. . . . If you have not secured a commitment for the mortgage loan by January 11th, either you, the Buyer, or the Seller may terminate this contract agreement by giving notice in writing to the other party . . . .

You have until January 11, 2017 to waive the mortgage contingency and give the Seller notice in writing that you wish to pay cash by certified check, cashier's check or money order. The proof of funds letter which you provided on December 7, 2016 is more than 30 days old, so a new letter showing proof of funding will be required to submit along with the written notice to change the financing to cash.

I suggest you take action tomorrow, January 10, 2017 if you desire to change the contract terms to cash, as **either party, Buyer or Seller, has the option on January 11 to terminate the contract by giving written notice to the other party. If a commitment for a mortgage is obtained by you and provided to the Seller prior to receipt of written termination by the Seller, then the contract agreement shall not be terminated.**

The next day, on January 10, 2017, plaintiff gave Garcia a memorandum purporting to be from Krueger on behalf of Ashford Financial, indicating that Ashford Financial would back a mortgage commitment in the amount of $135,000. This amount was not only meant to cover the property's purchase price, but also to "refurbish" the property. However, evidence was submitted at the trial court that this document—and the earlier document from Ashford Financial indicating that plaintiff was approved for a $350,000 line of credit—were forgeries. Krueger filed an affidavit stating that he did not compose either document and that Ashford Financial had not agreed to provide a mortgage for plaintiff. SSR's office manager and a branch manager of a title agency also submitted affidavits in which they averred that they had spoken to Krueger and that he confirmed that the documents were not authorized by Ashford Financial. Plaintiff eventually admitted that he drafted both documents, but he maintained that he did so with the express authorization of Krueger.

On January 12, 2017, plaintiff emailed Garcia, stating as follows:

- I already have a contract with the seller.

- I have performed to the letter of the contract.

- According to the contract I need not *show*[] whatever loan commitment I obtain to anyone, i.e., not to the seller, not to you, not even to [G]od.

- I have obtained a conventional loan commitment.

- I will see you on January 31, 2017 at the closing. Let me know what time and place.

On January 12, 2017, McNally drafted an addendum to the original purchase agreement that would have allowed plaintiff to waive the mortgage contingency and purchase the property with cash payments, with proof of funds due January 18, 2017. Plaintiff did not sign the proposed addendum.

On January 17, 2017, counsel for SSR sent a letter to plaintiff indicating that plaintiff had exceeded the time frame to secure a sufficient conventional loan. This letter notified plaintiff that SSR had information that "the document that [plaintiff] provided" purporting to establish a commitment for a mortgage "was fraudulent" and that, based on plaintiff's failure to comply with the terms of the agreement, the agreement was void.

On February 1, 2017, plaintiff filed suit to obtain specific performance on the contract. Shortly thereafter, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). In response, plaintiff presented a letter allegedly from Jacob Hultberg purporting to grant plaintiff a mortgage commitment. The letter was dated January 4, 2017— within the time period that plaintiff had to obtain a loan commitment—but was in the amount of $100,000. Plaintiff stated that, despite having this loan commitment at the ready, he did not want to move forward with Hultberg's commitment unless absolutely necessary. Plaintiff explained that "the terms were so bad in my estimation that I did not want to take that loan" and, as a result, "[i]t was sort of a backup in case I could not get a better loan than that." Plaintiff also provided his own affidavit, which stated as follows:

Being first duly sworn I hereby state the following . . .

* * *

2. That as of January 10, 2017 I had what I believed was a valid commitment of a mortgage loan from Dale Krueger to purchase the property located at 3215 East Genesee Avenue, Saginaw, Michigan.

3. That as of January 10, 2017 I also had what I believed was a valid commitment of a mortgage loan from Jacob Hultberg to purchase the property located at 3215 East Genesee Avenue, Saginaw, Michigan.

In granting defendants' motion, the trial court reasoned that the validity of the Ashford Financial loan was too suspect, particularly when plaintiff acknowledged that he—and not Krueger—drafted the letter detailing the alleged loan. The trial court further questioned the loans based upon Krueger's affidavit denying the loan's veracity. The trial court also reasoned

that, because plaintiff's purported loan from Hultberg financed an amount less than 100% of the property's purchase price, this loan commitment—even if legitimate—could not satisfy the terms of the purchase agreement. Accordingly, the trial court held that defendants properly terminated the purchase agreement and granted defendants' motion for summary disposition.

On appeal, plaintiff argues that the trial court erred by granting summary disposition because (1) he was not required to provide proof of a mortgage commitment within 30 days of the purchase agreement's acceptance and, therefore, defendants could not void the mortgage on this ground, and (2) he was not required to obtain a conventional mortgage with 100% of the purchase price financed because "no property with a conventional loan is ever 100% financed." Though we agree with plaintiff's first argument, we ultimately conclude that plaintiff is not entitled to appellate relief and, therefore, affirm the trial court's grant of defendants' motion for summary disposition.

This Court reviews a trial court's grant of summary disposition de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). Motions for summary disposition pursuant to MCR 2.116(C)(10) must first "specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact." MCR 2.116(G)(4). The moving party has the initial burden of supporting its position via pleadings, affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3)(b); MCR 2.116(G)(6). When a motion under MCR 2.116(C)(10) is adequately established and supported with proper evidence, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. MCR 2.116(G)(4). In so doing, the nonmoving party "may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in [the] rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

This Court similarly reviews de novo issues of contract interpretation. *Rory v Continental Ins Co*, 473 Mich 457, 465; 703 NW2d 23 (2005); *AFT Mich v Michigan*, 497 Mich 197, 208; 866 NW2d 782 (2015).

The first issue plaintiff raises on appeal is whether defendants could terminate the purchase agreement if plaintiff did not provide defendants with proof of a loan commitment within 30 days of the purchase agreement's acceptance. We hold that defendants could not.

Courts must generally construe unambiguous contract language as written. *Rory*, 473 Mich at 461. When interpreting the meaning of a contract, courts must give the words drafted by the parties their "plain and ordinary meaning that would be apparent to a reader of the instrument." *Id*. at 464. The parties' contractual intent is best discerned by the language actually used in the contract. *Id*. at 464, 469.

If a contract is determined to be ambiguous, judicial construction may be appropriate to determine its meaning. *In re MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999). A contract may be found to be ambiguous if "two provisions 'irreconcilably conflict with each other.' " *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007),

quoting *Klapp v United Ins Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003). A contractual provision may also be deemed ambiguous if it is " 'equally susceptible to more than a single meaning.' " *Coates*, 276 Mich App at 503, quoting *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004) But if a contract is determined to be unambiguous, it is not open to judicial construction and must be enforced as written. *Rory*, 473 Mich at 468.

In the present case, the contractual language at issue reads:

Buyer may waive the mortgage contingency by written notice to Seller or Seller's Agent and pay cash as provided in paragraph A above. Buyer agrees to use his or her best efforts to obtain such commitment. If commitment is not obtained within 30 days of final acceptance of this offer, either party may terminate this Agreement by giving written notice to the other party and to the Listing and Selling Offices. If a commitment is obtained by [B]uyer prior to receipt of such written termination by the Listing Office, then the Agreement shall not be terminated.

Read plainly, this provision does not require that plaintiff actually submit proof of a mortgage commitment to defendants within 30 days of the purchase agreement's signing. Instead, the contract only requires plaintiff to actually obtain a commitment; if defendants intended to require plaintiff to provide proof of a mortgage commitment prior to closing, defendants should have included such a requirement in the language of the contract. Moreover, this contractual language is not ambiguous; the quoted provision does not conflict with another in the purchase agreement, nor is it readily given multiple meanings. See *Coates*, 276 Mich App at 503. Accordingly, this Court cannot alter the agreement and must enforce it as written. See *id*. at 463, 468. As written, the contract does not give defendants the ability to terminate the contract if plaintiff failed to actually prove that he had obtained a mortgage agreement by January 11, 2017.

Defendants contend that reading the contract to mean that plaintiff was only required to actually obtain a mortgage commitment—and not to prove such commitment to defendants— renders the parties' termination power mere surplusage. See *Klapp*, 468 Mich at 468 (stating that courts are to avoid interpretations that render parts of a contract "surplusage or nugatory"). Defendants are mistaken. Both parties retained the ability to terminate the contract if either could show that plaintiff did not actually procure a mortgage commitment in a timely manner. Though it may have been more difficult for defendants to know whether plaintiff had done so without a requirement that plaintiff offer proof, this increased difficulty does not render the termination provision surplusage.

Defendants also contend that if we find that there was no requirement for plaintiff to provide proof of the mortgage commitment, then there was no mutuality of assent sufficient to form a contract. However, plaintiff's final offer was made to McNally in writing, and McNally signed the offer, affirming her agreement to those terms. Mutuality of assent is satisfied where there is proof of an express written agreement. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 373; 666 NW2d 251 (2003). Because the purchase agreement was in the form of a writing that was signed by both parties, the parties remain bound by its terms.

However, the outcome of this first issue is largely irrelevant. When viewing the evidence in the light most favorable to plaintiff, it was insufficient to establish a genuine issue of material fact that plaintiff obtained the requisite financing within 30 days of acceptance, regardless of whether he was required to submit proof of that financing to defendants.

At the hearing, defendants claimed that plaintiff had not actually obtained a mortgage commitment within the requisite timeframe. As the moving party, defendants bore the initial burden of supporting this position via pleadings, affidavits, depositions, admissions, or other documentary evidence. See MCR 2.116(G)(4) and (5). This is exactly what defendants did. The only evidence of plaintiff's mortgage commitment available to defendants was the letter they received from plaintiff in which Krueger, on behalf of Ashford Financial, purportedly approved plaintiff for a $135,000 mortgage. In response, defendants submitted affidavits from multiple individuals—including Krueger—averring that Krueger never promised to provide a mortgage commitment to plaintiff on behalf of Ashford Financial. Defendants also submitted emails exchanged between plaintiff and Garcia in which Garcia informed plaintiff that no mortgage commitment had been submitted, as well as the purchase agreement with the requirement that plaintiff obtain a mortgage commitment within 30 days of acceptance. The burden then shifted to plaintiff to set forth specific facts to illustrate a genuine issue of material fact relying on more than the support of his pleadings. See MCR 2.116(G)(4).

In the light most favorable to plaintiff, he failed to present sufficient evidence to establish a question of fact whether he obtained the requisite mortgage commitment within the required time. With respect to the mortgage commitment from Krueger, the only evidence that plaintiff presented was plaintiff's affidavit. Plaintiff's affidavit, when taken as fact, only states that plaintiff *believed* that he had obtained sufficient mortgage commitments; it does not state that plaintiff had, in fact, obtained the commitment. Plaintiff's belief was insufficient to establish a genuine issue of material fact. See *Durant v Stahlin*, 375 Mich 628, 639; 135 NW2d 392 (1965) (holding that a nonmoving party does not establish a genuine issue of material fact by providing affidavits "based solely on 'information and belief' "). Plaintiff contends that a question of fact existed whether the Krueger mortgage commitment was valid because Krueger verbally agreed to a mortgage commitment and gave plaintiff permission to sign a letter in Krueger's name affirming the commitment. However, plaintiff never offered any evidence to support these assertions, and, again, plaintiff's belief that he secured a commitment is not enough. Accordingly, the trial court's decision that the alleged Krueger mortgage was too suspect to create a genuine issue of material fact was not erroneous.

As to the alleged mortgage commitment from Hultberg, we again agree with the trial court. Plaintiff offered as evidence a document that plaintiff claims was drafted by Hultberg, which served as a written mortgage commitment to plaintiff on January 4, 2016. However, the commitment was for an amount less than 100% of the property's purchase price, and the purchase agreement stated that the conventional mortgage was to be for 100% of the purchase price. Thus, the Hultberg mortgage commitment, although received within the 30-day deadline, nonetheless failed to satisfy the terms of the purchase agreement because it was for less than 100% of the purchase price. Therefore, summary disposition for defendants' was proper.

Plaintiff briefly contends that the term "conventional mortgage" is ambiguous. However, no party ever contested—and the trial court never addressed—whether the mortgage

commitment plaintiff acquired was the correct type of mortgage. And even if we agreed with plaintiff that this term was ambiguous, it would not affect our decision. The relevant part of the purchase agreement—the phrase "100% of the purchase price"—is not ambiguous. That provision clearly required plaintiff to receive a mortgage commitment for the entire purchase price. Plaintiff's mortgage commitment of $100,000 was less than the purchase price of $114,900. Therefore, the commitment clearly did not satisfy the term "100% of the purchase price," regardless of whether it was a conventional mortgage or not.

Plaintiff also contends that it was an impossibility to obtain a mortgage commitment for 100% of the purchase price. Plaintiff further argues that, because it is impossible to obtain a mortgage for 100% of the purchase price, the contested provision amounted to a mutual mistake. We reject both arguments because plaintiff failed to produce any evidence that it is impossible to obtain a mortgage for 100% of a property's purchase price.

At the trial court, plaintiff represented himself. He first addressed this issue in a motion for reconsideration, and he advised the trial court that it could confirm his assertion that no conventional mortgage covered 100% of the purchase price by "googling it." Plaintiff did not put forth any evidence, other than his belief and this statement, to establish his assertion. Apparently, plaintiff mistakenly believed that he could put forth an assertion and then leave it up to the trial court to confirm whether his assertion was true. See *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (holding that it is not sufficient for a party to leave it up to a court to discover and rationalize the basis for his claims). On appeal, plaintiff is represented by counsel, who likewise claims that it is impossible to obtain a conventional mortgage for 100% of the purchase price, but likewise fails to support this assertion in any way. Therefore, we have no basis to review this issue, and we decline to do so. *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position."). Moreover, we have researched this issue and found that, contrary to plaintiff's position, it appears possible to finance 100% of a property's purchase price with a conventional mortgage. See Appraisal Institute, The Appraisal of Real Estate (11th ed), p 113 (explaining that purchase-money insurance is used to finance mortgages in excess of 75-80% of the purchase price); 12 USC 1454(a)(2) (authorizing the Federal National Mortgage Association (FNMA) to purchase a conventional mortgage secured by a property made up of one-to-four family dwelling units if the principal balance of the mortgage at the time of purchase is greater than 80% of the property's value so long as certain conditions are met); 12 USC 1717(b)(2) (restating the pertinent material found in 12 USC 1454(a)(2), suggesting that there is no upper limit to the financing of mortgage loans secured by properties made up of one-to-four family dwelling units that the FNMA can purchase).

Affirmed. Defendants, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Michael J. Kelly
/s/ Colleen A. O'Brien